# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1198

_____

Ronald D. Murray, Jr.,       *
      *
      Appellant,       *
      *
      v.       *
      *
Jason Lene, in his official and       *
individual capacity; Christine Steele,       *    Appeal from the United States
in her official and individual       *    District Court for the
capacity; Director of the Missouri       *    Eastern District of Missouri.
Department of Social Services, in his       *
or her individual capacity; Adair       *
County Missouri Sheriff, in his official       *
capacity in the State of Missouri;       *
Board of County Commissioners for       *
Adair County, Missouri; Kayela       *
Vittetoe, in her individual capacity,       *
      *
      Appellees.       *

_____

Submitted: December 17, 2009
Filed: February 23, 2010

_____

Before LOKEN, Chief Judge, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Ronald Murray brought an action for damages under 42 U.S.C. § 1983 and Missouri law against the director of the Missouri Department of Social Services (DSS) and one of its employees, Christine Steele; Adair County, Missouri, Deputy Jason Lene, and the county's sheriff and board of commissioners; and Mr. Murray's ex-wife, Kayele Vittetoe. Mr. Murray claimed that the defendants conspired to violate his civil rights, unreasonably seized him in violation of the fourth amendment, and violated the due process rights that the fifth and fourteenth amendments guarantee. *See* U.S. Const. amends. IV, V, XIV. His complaint also contained various state tort claims against the defendants.

Mr. Murray, who lives in Iowa, and Ms. Vittetoe, who lives in Missouri, shared custody of their two children. Pursuant to what is called a joint parenting plan that was adopted by a Missouri court, *see* Mo. Rev. Stat. §§ 452.310.8, 452.375.9, the children were scheduled to stay in Iowa with Mr. Murray from May 29 until July 10, 2005, at which time Mr. Murray was obligated to return the children to Ms. Vittetoe in Missouri. During the visit, however, the children made allegations of sexual abuse against Ms. Vittetoe and her husband. When Mr. Murray relayed these allegations to an Iowa social worker, the social worker contacted the Missouri Division of Family Services (MDFS) (a division of DSS) to investigate. Ms. Steele, an MDFS employee, helped construct and implement a safety plan that provided that Ms. Vittetoe and her husband could not contact the children until an MDFS case worker deemed it appropriate. The children were to stay with Ms. Vittetoe's parents during the course of the investigation. Ms. Vittetoe agreed to the arrangement.

Despite his duty to do so, Mr. Murray did not return the children to Missouri on July 10. Officer Lene discussed the safety plan with Mr. Murray by phone on July 11 but he refused to comply, stating that he would not relinquish the children to their

maternal grandparents without a court order requiring him to do so. He also told the officer that if such an order were issued, he would comply.

Ms. Vittetoe then filed a complaint with the Adair County sheriff's office regarding Mr. Murray's failure to return the children, whereupon Officer Lene sought advice from the county attorney, Mr. Williams. At Mr. Williams's suggestion, Officer Lene prepared a probable cause statement, although he neglected to mention that Mr. Murray was willing to comply with a court order to return the children, that Mr. Murray and Ms. Vittetoe shared joint custody, and that Ms. Vittetoe had agreed not to have any contact with the children during the course of the investigation. Based on Officer Lene's affidavit, Mr. Williams initiated a prosecution against Mr. Murray for abducting his children and the Cedar Rapids, Iowa, Police Department arrested and detained him for about a month before it released him on his own recognizance. After a grand jury declined to indict Mr. Murray and Mr. Williams dismissed the prosecution, Mr. Murray commenced this suit.

The district court dismissed Mr. Murray's amended complaint against Ms. Steele and the DSS director for failure to state a claim and denied Mr. Murray's motion to alter or amend the order of dismissal. The district court later entered a default judgment against Ms. Vittetoe in the amount of $100 and granted summary judgment to the remaining defendants. On appeal, Mr. Murray challenges all of the district court's rulings on his § 1983 claims, as well as its refusal to exercise supplemental jurisdiction over his state claims against Ms. Steele and the DSS director.

## I.

We turn first to the district court's dismissal of Mr. Murray's complaint against Ms. Steele and the DSS Director for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A complaint "must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). Mr. Murray's sole federal claim against Ms. Steele and the DSS director was that they, along with other defendants, conspired to violate Mr. Murray's constitutional rights under § 1983. A conspiracy claim, however, requires allegations of specific facts tending to show a "meeting of the minds" among the alleged conspirators. *Kearse v. Moffett*, 311 F.3d 891, 892 (8th Cir. 2002) (per curiam); *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000). The factual allegations in Mr. Murray's complaint do not directly or indirectly suggest such a "meeting of the minds" between Ms. Steele or the DSS director and any other alleged conspirator, and so the district court correctly decided that Mr. Murray failed to state a claim under § 1983. Once the court concluded that Mr. Murray's complaint did not make out a federal claim against Ms. Steele or the DSS director, it did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims against them. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 743 (8th Cir. 2009).

## II.

Mr. Murray also contends that the district court abused its discretion by entering a default judgment against Ms. Vittetoe in the amount of only $100 even though he asked for damages of over $4 million. We conclude, however, that Mr. Murray was not entitled to recover damages from Ms. Vittetoe in any amount because his complaint failed to state a claim against her.

Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit mere conclusions of law." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998). Here, Mr. Murray alleges that Ms. Vittetoe conspired with state officials to violate his constitutional rights, but, as with Ms. Steele and the DSS director, the factual allegations against Ms. Vittetoe – that she made a sworn statement against Mr. Murray for his failure to return the children to her – are not sufficient to support a finding that a "meeting of the minds" took place between Ms. Vittetoe and anyone else. Since, as we noted above, a valid conspiracy claim requires such a finding, the district court should have dismissed the complaint against Ms. Vittetoe. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). We therefore vacate the judgment for $100 against her.

## III.

Finally, Mr. Murray appeals the district court's entry of summary judgment in favor of Officer Lene, the Adair County sheriff, and the Adair County commissioners, on the unreasonable seizure and substantive due process claims. Summary judgment is appropriate if the evidence, viewed in the light most favorable to Mr. Murray, presents no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 871 (8th Cir. 2008).

Mr. Murray argues that, because there was no probable cause to arrest him, he was unreasonably seized in violation of the fourth amendment. Probable cause existed if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing" that Mr. Murray had committed an offense. *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (internal quotation marks and citation omitted).

Under Missouri law, child abduction occurs when a person, "[a]t the expiration of visitation rights outside the state, intentionally fails or refuses to return or impedes the return of the child to the legal custodian in Missouri." Mo. Rev. Stat. § 565.156(2). Mr. Murray argues that there was no probable cause that he committed

this offense because a provision in the joint parenting plan provided that "[i]f child care is needed for more than four hours a day, the other parent can have the right of refusal and instead opt to take custody of the child at that time." In Mr. Murray's view, when Ms. Vittetoe agreed to abide by the safety plan and not have contact with the children, she essentially agreed to have the children's grandparents provide child care for more than four hours a day. This event, according to Mr. Murray, triggered his right of refusal and eliminated his obligation to return the children to Missouri on July 10. He contends that probable cause therefore did not exist because proof of two elements of § 565.156(2) were missing: his visitation rights had not expired and there was no legal custodian in Missouri to whom the children could be returned.

Mr. Murray's proposed construction of the agreement is not altogether farfetched, but it is not the most reasonable one. In any event, the agreement does not obviously give the right of custody to Mr. Murray under these circumstances, and a prudent person could conclude that the safety plan made Ms. Vittetoe's parents the legal custodians of the children, and therefore that Mr. Murray committed the offense of child abduction by refusing to return the children to their grandparents after his visitation rights expired. Accordingly, we hold that there was probable cause to believe that Mr. Murray violated § 565.156.

We construe Mr. Murray's complaint to allege a similar, but distinct, claim that Officer Lene violated his fourth amendment rights by submitting a false and misleading affidavit in support of the warrant for his arrest. *See Bagby v. Brondhaver*, 98 F.3d 1096, 1097-98 (8th Cir. 1996). A fourth amendment violation occurred if Officer Lene's probable cause statement contained a " 'deliberate falsehood' " or he acted with " 'reckless disregard for the truth' " when he prepared it. *Id.* at 1098 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Mr. Murray does not accuse Officer Lene of any deliberate falsehood; he asserts instead that the officer exhibited a reckless disregard for the truth when he failed to include various facts in his statement. Mr. Murray asserts that Officer Lene should have included in his statement

that Mr. Murray and Ms. Vittetoe shared joint custody, that Ms. Vittetoe had agreed not to have any contact with the children, and that Mr. Murray told Officer Lene that he would comply with a court order requiring him to release the children to their grandparents.

We have held that "recklessness may be inferred from the omission of information from an affidavit ... only when the material omitted would have been clearly critical to the finding of probable cause." *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995) (internal quotation marks and citations omitted), *cert. denied*, 516 U.S. 871 (1995). We do not believe that any of Officer Lene's omissions meet this standard. Missouri's child abduction statute does not take into account whether the parents shared joint custody, so the officer's omission of this information had no bearing whatever on the existence of probable cause. We have already explained, moreover, why there was probable cause to believe that Mr. Murray's visitation rights had already expired when he spoke to Officer Lene, and his willingness to return the children to Missouri if compelled by a court order would not alter the conclusion that he, when asked to do so by Officer Lene, refused "to return the children to the legal custodian in Missouri" at the expiration of his visitation rights outside the state.

The fact that Ms. Vittetoe agreed not to have contact with the children during the investigation would also not have been "clearly critical" to the finding of probable cause. Even though the inclusion of this information might have strengthened Mr. Murray's contention, discussed above, that there was no "legal guardian" present in Missouri to whom the children could be returned, we think that this would be more relevant to Mr. Murray's ultimate guilt, not whether probable cause existed to believe that he was guilty. Officer Lene's omissions might have been negligent, but the present record would not support a conclusion that he acted with "reckless disregard for the truth" in preparing his affidavit. The district court thus correctly granted summary judgment on this claim.

IV.

The district court also properly granted summary judgment on Mr. Murray's substantive due process claim. Mr. Murray maintains that by removing the children from his custody, the defendants interfered with his constitutional right as a parent to the custody and control of his children. *See Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005). He takes issue with the safety plan entered into between the State of Missouri and Ms. Vittetoe, arguing that it could not bind him or transfer custody of the children to any other individual. Mr. Murray's real objection seems to be to Ms. Steele and the DSS, who created the safety plan and have been dismissed from the case, as there does not appear to be any causal connection between Officer Lene's actions and the alleged constitutional deprivation. In any event, we agree with the district court that after balancing Mr. Murray's fundamental right as a parent against the government's compelling interest in protecting children, which Mr. Murray concedes we must do, it is apparent, even viewing the facts favorably to Mr. Murray, that any disruption in custodial rights was justified by the government's interest in conducting the child abuse investigation. *See id.*; *cf. Heartland Acad. Cmty. Church*, 427 F.3d 525, 534 (8th Cir. 2005).

Finally, Mr. Murray's claims against the sheriff and the board of commissioners in their official capacities are treated as claims against Adair County itself. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Because we have consistently held that a municipality cannot be liable under § 1983 unless one of its employees is found liable, *see, e.g., Turpin v. County of Rock*, 262 F.3d 779, 784 (8th Cir. 2001); *Reynolds v. City of Little Rock*, 893 F.2d 1004, 1007 (8th Cir. 1990), we conclude that the county was entitled to summary judgment.

For the foregoing reasons, we affirm the district court's dismissal of the complaint against Ms. Steele and the DSS Director for failure to state a claim, as well as the district court's grant of summary judgment in favor of Officer Lene, the Adair County Commissioners, and the Adair County Sheriff. We vacate the district court's

entry of default judgment in the amount of $100 against Ms. Vittetoe and remand to the district court for entry of judgment in favor of Ms. Vittetoe.

_____